UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETHANY CHRISTIAN SERVICES;
BETHANY CHRISTIAN SERVICES
OF MICHIGAN; and BETHANY
CHRISTIAN SERVICES USA, LLC,

               Plaintiffs,

v

SUSAN CORBIN, in her official
capacity as director of the MICHIGAN
DEPARTMENT OF LABOR AND
ECONOMIC OPPORTUNITY; POPPY
SIAS HERNANDEZ, in her official
capacity as Executive Director of the
OFFICE OF GLOBAL MICHIGAN, and
BEN CABANAW, in his official
capacity as Deputy Director of the
OFFICE OF GLOBAL MICHIGAN,

               Defendants.

Case No.  1:24-cv-0922-JMB-PJG

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

---

Jonathan E. Lauderbach (P51313)
Matthew T. Nelson (P64768)
Katherine G. Boothroyd (P85881)
Daniel S. Brookins (PP86665)
Attorneys for Plaintiffs
WARNER NORCROSS + JUDD LLP
150 Ottawa Ave NW, Ste. 1500
Grand Rapids, MI 49503
(616) 752-2000
jlauderbach@wnj.com
mnelson@wnj.com
kboothroyd@wnj.com
dbrookins@wnj.com

Lori D. Kemper
Steven T. McFarland
Attorneys for Plaintiffs
Center for Law & Religious Freedom
Christian Legal Society
8001 Braddock Road, Suite 302
Springfield, VA 22151

---

Gallant Fish (P82196)
Jason Hawkins (P71232)
Assistant Attorneys General
Attorneys for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 336-7641
fishg2@michigan.gov
hawkinsj@michigan.gov

_____/

### DEFENDANTS' MOTION TO DISMISS
### PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF NO. 41)

Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Defendants move for dismissal of Plaintiffs' First Amended Complaint (ECF No. 41).  In support of said motion, Defendants state the following:

1.      This Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction because Plaintiffs have failed to establish standing.

2.      This Court should also dismiss Plaintiffs' claims because Plaintiffs have failed state a claim upon which relief can be granted.

3.      Plaintiffs have not sufficiently pled a viable claim against Defendants under 42 U.S.C. § 1983 because they have failed to allege actionable conduct by, or to identify a governmental policy or custom attributable to, Defendants that proximately caused any of Plaintiffs' rights to be violated.

4.      Finally, Plaintiffs have failed to sufficiently plead a violation of their rights under the First Amendment to the United States Constitution.

5.    On January 16, 2025, in accordance with Local Rule 7.1(d)(i),

Defendants confirmed that Plaintiffs will oppose this motion.

WHEREFORE, for these reasons and those in the accompanying brief in

support, Defendants request that this Court dismiss Plaintiffs' First Amended

Complaint in its entirety with prejudice, vacate the Stipulated Preliminary

Injunctive Order (ECF No. 35), and award Defendants any appropriate costs and

fees.

Respectfully submitted,

*/s/ Gallant Fish*
Gallant Fish (P82196)
Jason Hawkins (P71232)
Assistant Attorneys General
Attorneys for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
fishg2@michigan.gov
hawkinsj@michigan.gov

Dated:  January 17, 2025

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETHANY CHRISTIAN SERVICES;
BETHANY CHRISTIAN SERVICES
OF MICHIGAN; and BETHANY            Case No.  1:24-cv-0922-JMB-PJG
CHRISTIAN SERVICES USA, LLC,

                                   HON. JANE M. BECKERING
            Plaintiffs,

v                                  MAG. PHILLIP J. GREEN

SUSAN CORBIN, in her official
capacity as director of the MICHIGAN
DEPARTMENT OF LABOR AND
ECONOMIC OPPORTUNITY; POPPY
SIAS HERNANDEZ, in her official
capacity as Executive Director of the
OFFICE OF GLOBAL MICHIGAN, and
BEN CABANAW, in his official
capacity as Deputy Director of the
OFFICE OF GLOBAL MICHIGAN,

            Defendants.

---

Jonathan E. Lauderbach (P51313)      Lori D. Kemper
Matthew T. Nelson (P64768)           Steven T. McFarland
Katherine G. Boothroyd (P85881)      Attorneys for Plaintiffs
Daniel S. Brookins (PP86665)         Center for Law & Religious Freedom
Attorneys for Plaintiffs             Christian Legal Society
WARNER NORCROSS + JUDD LLP           8001 Braddock Road, Suite 302
150 Ottawa Ave NW, Ste. 1500         Springfield, VA 22151
Grand Rapids, MI 49503
(616) 752-2000
jlauderbach@wnj.com
mnelson@wnj.com
kboothroyd@wnj.com
dbrookins@wnj.com

---

Gallant Fish (P82196)
Jason Hawkins (P71232)
Assistant Attorneys General
Attorneys for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 336-7641
fishg2@michigan.gov
hawkinsj@michigan.gov

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF NO. 41)**

**ORAL ARGUMENT REQUESTED**

Gallant Fish (P82196)
Jason Hawkins (P71232)
Assistant Attorneys General
Attorneys for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
fishg2@michigan.gov
hawkinsj@michigan.gov

Dated: January 17, 2025

# TABLE OF CONTENTS

<u>Page</u>

Index of Authorities ................................................................................. iii

Concise Statement of Issues Presented ...................................................... vi

Introduction ............................................................................................ 1

Statement of Facts .................................................................................. 2

Standard of Review .................................................................................. 2

Argument ............................................................................................... 4

I.    Bethany has failed to adequately plead standing. ............................................ 4

      A.    Bethany cannot establish injury-in-fact or redressability as to
            the majority of its claims................................................................... 4

      B.    Bethany lacks standing to challenge the awarding of a grant to
            another service provider. ................................................................ 8

II.   Bethany has failed to state a claim upon which relief can be granted. ............ 8

      A.    Bethany has failed to plead a viable claim under 42 U.S.C. §
            1983 against Defendants.................................................................. 9

            1.    Bethany has not identified an express written policy
                  attributable to Defendants. ..................................................... 12

            2.    Bethany has not identified a decision of a person with
                  final policymaking authority that caused the deprivation
                  of its constitutional rights. ..................................................... 12

            3.    Bethany has not otherwise identified a permanent or
                  widespread custom with the force and effect of law that
                  proximately caused its rights to be violated............................... 14

      B.    Bethany has not adequately pled a violation of its First
            Amendments rights............................................................................ 15

            1.    Bethany's amended complaint does not adequately state a
                  free-exercise claim. ................................................................ 16

                  a.    Bethany has not sufficiently pled a burden on the
                        free exercise of its religious beliefs................................. 17

       b.    Any alleged burden on Bethany's free-exercise rights is justified by a neutral and generally applicable policy............................................................... 18

       c.    Bethany's factual allegations do not establish targeting. ........................................................................... 23

    2.    Bethany's amended complaint also does not adequately state a freedom of association claim. .......................................... 24

    3.    Bethany's reliance on the ministerial exception is misplaced. ............................................................................ 28

Conclusion and Relief Requested ............................................................. 31

Certificate of Compliance ........................................................................ 32

Certificate of Service................................................................................ 33

## INDEX OF AUTHORITIES

Page

**Cases**

*Allard v. Weitzman, (In Re DeLorean Motor Corp.),*
  991 F.2d 1236 (6th Cir. 1993) ................................................................. 3

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................. 3, 13, 22

*Bd. of County Comm'rs. of Bryan County, OK v. Brown,*
  520 U.S. 397 (1997) .............................................................. 9, 11, 14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................... 3, 13

*Bordanaro v. McLeod,*
  871 F.2d 1151 (1st Cir. 1989) .................................................... 11

*Boy Scouts of America v. Dale,*
  530 U.S. 640 (2000) ....................................................... 24, 25, 27

*Bryce v Episcopal Church in Diocese of Colo.,*
  289 F.3d 648 (10th Cir, 2002) ................................................ 28, 29

*Carrier Corp. v. Outokumpu Oyj,*
  673 F.3d 430 (6th Cir. 2012) ........................................................ 2

*Christian Legal Society Chapter of the University of California, Hastings
  College of the Law v. Martinez*
  561 U.S. 661 (2010) ..................................................................... 25

*Church of the Lukumi Babalu Aye v. City of Hialeah,*
  508 U.S. 520 (1993) ............................................................... 17, 23

*City of St. Louis v. Praprotnik,*
  485 U.S. 112 (1988) ............................................................. passim

*Conlon v InterVarsity Christian Fellowship,*
  777 F.3d 829 (6th Cir., 2015) ........................................... 28, 29, 30

*Elec. Merch. Sys. v. Gaal,*
  58 F.4th 877 (6th Cir. 2023) ...................................................... 2, 20

*Emp't Div. v. Smith,*
    494 U.S. 872 (1990) ................................................................. 18

*Groves v. Dep't of Corr.,*
    811 N.W.2d 563 (Mich. Ct. App. 2011) .................................... 8

*Jett v. Dallas Indep. Sch. Dist.,*
    491 U.S. 701 (1989) ................................................................. 10

*Kanuszewski v. Mich. Dep't. of Health and Human Servs.,*
    927 F.3d 396 (6th Cir. 2019) .................................................... 5

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ................................................................. 7

*Kentucky v. Yellen,*
    54 F.4th 325 (6th Cir., 2022) ................................................... 6

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................. 7

*Miller v. City of Cincinnati,*
    622 F.3d 524 (6th Cir. 2010) .................................................... 25

*Monell v. Dep't. of Soc. Servs. of City of New York,*
    436 U.S. 658 (1978) ................................................................. 9

*Norwood v. Harrison,*
    413 U.S. 455 (1973) ................................................................. 25

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    591 U.S. 732 (2020) ............................................................ 28, 29

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ............................................................ 9, 10

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ................................................... 24, 25, 26, 27

*Shehee v. Luttrell,*
    199 F.3d 295 (6th Cir. 1999) .................................................... 13

*Shelby Advocates for Valid Elections v. Hargett,*
    947 F.3d 977 (6th Cir. 2020) .................................................. 5, 6

*Spokeo, Inc. v Robins,*
    578 U.S. 330 (2016) ........................................................... 2, 4, 7

*St. Augustine's Nat'l. Found., Inc. v. Metcalf,*
 No. 08-11352, 2008 WL 2546583 (E.D. Mich. June 20, 2008) ................................ 8

*Stalley v. Methodist Healthcare,*
 517 F.3d 911 (6th Cir. 2008) .................................................................................... 2

*Summum v. City of Odgen,*
 297 F.3d 995 (10th Cir. 2002) .................................................................................. 9

*TransUnion LLC v Ramirez,*
 594 U.S. 413 (2021) .................................................................................................. 4

*Trinity Lutheran Church of Columbia v. Comer,*
 582 U.S. 449 (2017) ................................................................................................ 17

*United States v. Lee,*
 455 U.S. 252 (1982) ................................................................................................ 17

*Walbridge Aldinger Co. v. City of Detroit,*
 495 F. Supp. 2d 642 (E.D. Mich. 2007) .................................................................. 8

*Ward v. Polite,*
 667 F.3d 727 (6th Cir. 2012) .............................................................................. 18, 23

*Wilson v. Cook Cnty.,*
 742 F.3d 775 (7th Cir. 2014) .................................................................................. 11

*Wimberly v. City of Clovis,*
 375 F. Supp. 2d 1120 (D.N.M. 2004) ..................................................................... 10

## Statutes

42 U.S.C. § 1983 .................................................................................................... 8, 9

Mich. Comp. Laws § 37.2209 ................................................................................ 19

## Rules

45 C.F.R. § 87.3(d) ............................................................................................ 26, 30

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 2, 31

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2, 31

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Have Plaintiffs failed to plead facts establishing standing, such that this Court lacks subject matter jurisdiction?

2.    Have Plaintiffs failed to state a claim upon which relief can be granted?

## INTRODUCTION

Bethany Christian Services' amended complaint adds a new Defendant and a new claim, but the thrust of its claims remains the same.  Per Bethany, Defendants engaged in religious discrimination by allegedly concluding that Bethany's practice of barring non-Christians from employment violated nondiscrimination provisions of Bethany's state contracts and then taking actions consistent with this conclusion. Instead, per Bethany, Defendants should have applied a complicated (and flawed) constitutional analysis to conclude that Bethany's hiring practices were exempt from this provision, or that they were otherwise lawful.

Bethany's claims, as pled, fail on several fronts.  As an initial matter, Bethany's amended complaint fails to establish standing, both under Article III and under long-standing state law denying standing to a disappointed bidder.  Beyond this, Bethany also fails to identify a policy or custom for purposes of § 1983; its amended complaint instead focuses on the individual actions of certain Defendants, without establishing (or alleging) that those Defendants were final policymakers.

Ultimately, Bethany also fails to adequately allege a violation of its First Amendment rights.  As to its free-exercise claim, the amended complaint fails to support the alleged burden on Bethany's religious exercise.  Moreover, *all* state contracts in Michigan prohibit hiring discrimination—thus, this neutral and generally applicable policy does not target Bethany.  For its remaining claims, Bethany relies on First Amendment principles that are not applicable here.

Bethany has failed to establish standing and to properly state a claim. Accordingly, this Court should dismiss Bethany's amended complaint.

## STATEMENT OF FACTS

Because Defendants bring their motion to dismiss, in part, under Rule 12(b)(6), they accept all of Bethany's well-pleaded factual allegations as true. And, the parties have filed multiple briefs thus far with the Court that lay out the pertinent facts at this stage of the case. Thus, Defendants will refer to any relevant allegations in the argument section of this brief by citing to Bethany's amended complaint and supporting documentation.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(1) is appropriate where Plaintiffs have failed to establish standing. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Because Defendants raise a facial challenge to subject matter jurisdiction, "all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). Plaintiffs bear the burden of establishing standing and "must clearly allege facts demonstrating each element." *Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016).

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion brought under Rule 12(b)(6), a court may consider exhibits attached to the complaint, as well as documents found elsewhere in the record and matters of public record. *Elec. Merch. Sys. v. Gaal*, 58 F.4th 877, 883–884 (6th Cir. 2023). Additionally, a court may consider exhibits attached to a motion to dismiss, if those documents are referenced in the complaint and central to its claims. *Id.*

2

A complaint must contain either direct or inferential allegations establishing all the material elements of a claim to sustain a recovery under some viable legal theory. *Allard v. Weitzman, (In Re DeLorean Motor Corp.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Accordingly, a complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Allegations amounting to "naked assertions devoid of further factual enhancement" need not be accepted as true, nor do legal conclusions. *Id.* (cleaned up).

The well-pled factual allegations contained in the complaint must ultimately amount to more than "the mere possibility of misconduct," *id.* at 679, or "a suspicion of a legally cognizable right of action," *Twombly*, 550 U.S. at 555 (cleaned up). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). Finally, a plaintiff must present well-pleaded allegations showing that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

# ARGUMENT

## I. Bethany has failed to adequately plead standing.

As the party seeking to invoke federal jurisdiction, Bethany bears the burden of clearly alleging facts establishing standing.  *Spokeo*, 578 U.S. at 338.  Bethany has failed to do so on two levels.  First, Bethany has not adequately alleged injury-in-fact as to at least of subset of its claims and has not established redressability as to any of its claims.  Second, Bethany lacks standing under well-settled Michigan law holding that a disappointed bidder does not have standing to challenge the award of a contract to another bidder.

### A. Bethany cannot establish injury-in-fact or redressability as to the majority of its claims.

Standing requires three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo*, 578 U.S. at 338.  Importantly, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  *TransUnion LLC v Ramirez*, 594 U.S. 413, 431 (2021).

Bethany's amended complaint is vague as to the injury it alleges but appears to allege both past and future harms.  As to past harm, Bethany alleges that its bids for three refugee supplemental services were denied.  (ECF No. 41, PageID.762–763, 771, ¶¶ 169, 244.)  And as to future harm, Bethany alleges that Defendants

4

Hernandez and Cabanaw have "poisoned" the bid process against Bethany, which will cause Bethany to lose future bids for contracts.  (*Id.*, PageID.762, 771, ¶¶ 162–167, 244–245.)

When relying on the threat of future harm, a plaintiff must allege harm that is "*certainly* impending," not based on "mere speculation and assumptions." *Kanuszewski v. Mich. Dep't. of Health and Human Servs.*, 927 F.3d 396, 410 (6th Cir. 2019) (cleaned up).  In this context, "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020).

Here, Bethany's allegations as to threats of future harm are built on assumptions and speculation.  Bethany alleges that the "poisoned process" created by Defendants Hernandez and Cabanaw will cause the "same injury" (assumedly, lost contracts) "in the next bid cycle."  (ECF No. 41, PageID.771, ¶ 246.)  But, per the allegations in its amended complaint, in this past bid cycle, Bethany was awarded more contracts than it lost.  (*Compare id.*, PageID.762, ¶ 169 (noting that Bethany lost three bids for supplemental services contracts) *with id.*, PageID.768, ¶ 217 (noting that the Office of Global Michigan (OGM) awarded Bethany six URM contracts) *and id.*, PageID.763, ¶ 174 (noting that Bethany received reception and placement funding).)  Moreover, while Bethany challenges specific language contained in certain RFPs, Bethany acknowledges that this language was not included in all RFPs, (*id.*, PageID.768, ¶ 220), and that this language was

5

eventually removed from the contracts awarded to Bethany at its request, (*id.*, PageID.767, ¶ 210).  In each of these ways, Bethany has failed to adequately allege that its alleged future harm is certainly impending, rather than speculative.  To the extent that Bethany's claims are based on the threat of future harm, then, Bethany fails to establish injury-in-fact.

As to redressability, while again unclear, Bethany appears to seek both retrospective and prospective relief.  As to retrospective relief, Bethany seeks a declaration that Defendants' past actions were unconstitutional, (*id.*, PageID.776, ¶¶ 1–2), injunctive relief requiring Defendants to re-bid certain contracts, (*id.*, PageID.778, ¶ 7b), and damages, (*id.*, PageID.779, ¶ 8).  The remainder of Bethany's requested relief is prospective, asking the court for sweepingly-broad declaratory and injunctive relief prohibiting Defendants from in any way penalizing Bethany for its hiring practices.[1]  (*Id.*, PageID.777–778, ¶¶ 3–6, 7c–7e.)

Both forms of requested relief are critically flawed as to redressability.  As to the alleged past harms—the loss of certain bids—declaratory and injunctive relief are not appropriate.  "[A]n injunction cannot be used to redress a purely past injury."  *See Kentucky v. Yellen*, 54 F.4th 325, 339 (6th Cir., 2022).  *See also Shelby Advocates*, 947 F.3d at 981 ("To obtain declaratory or injunctive relief, a claimant

---

[1] Bethany also asks that this Court "preserve the status quo regarding Bethany Christian's provision of refugee-related services in the Grand Rapids, Kalamazoo, and Traverse City areas through the dates of the contracts for those services."  (ECF No. 41, PageID.778, ¶ 7a.)  The meaning of this requested relief is unclear, as Bethany gives no indication of which specific contracts, in effect at the time of the filing of the amended complaint, it is referring to.

must show *a present ongoing harm or imminent future harm*." (emphasis added)). And while Bethany nominally states a claim for damages, Bethany brings only official-capacity claims, meaning that any claim for damages is barred by the 11th Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

And as to future harm, Bethany has failed to explain how its requested relief will redress the "poisoned process" as described by Bethany.  Bethany alleges that the bid process was poisoned by "plac[ing] employees with known conflicts of interest on the bid-review panel," by communicating to OGM staff that OGM did not support Bethany's hiring practices, and by generally "foster[ing] a culture within OGM that was hostile to Bethany Christian," such that "[e]very OGM employee who reviewed Bethany Christian's bids had been encouraged to discriminate against Bethany Christian."  (ECF No. 41, PageID.762, ¶¶ 162–167.)  None of these alleged harms, however, would be redressed through Bethany's requested relief.  Declaring Bethany's hiring practices constitutionally protected would not undo the hostile culture that Bethany alleges.  Moreover, to the extent that Bethany alleges that the opinions and actions of the employees who scored its bid proposals caused its injuries, redressability cannot depend on the actions of third parties. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–562 (1992).  Accordingly, Bethany's requested relief as to its alleged future harm also fails as to redressability.

Bethany bears the burden of "clearly alleg[ing] facts demonstrating each element" of standing. *Spokeo*, 578 U.S. at 338.  Bethany has failed to do so.

**B.    Bethany lacks standing to challenge the awarding of a grant to another service provider.**

At bottom, Bethany appears to challenge the bidding process for refugee-service grants, the process for awarding a grant to another service provider, or the decision to award a grant to another provider, and it asks this Court to order that certain RFPs be re-bid.  (ECF No. 41, PageID.738, 744, 760, 762–763, 767, 771, 778, ¶¶ 40–43, 150, 208, 245.)  But Michigan law has long held that disappointed bidders like Bethany lack standing to bring such a challenge to the bidding process.  *Groves v. Dep't of Corr.*, 811 N.W.2d 563, 567–568 (Mich. Ct. App. 2011); *see also Walbridge Aldinger Co. v. City of Detroit*, 495 F. Supp. 2d 642, 643 (E.D. Mich. 2007) *and St. Augustine's Nat'l. Found., Inc. v. Metcalf*, No. 08-11352, 2008 WL 2546583, at *3–4 (E.D. Mich. June 20, 2008) (each recognizing the same).  For this reason as well, Bethany has failed to establish standing.

**II.    Bethany has failed to state a claim upon which relief can be granted.**

As contended below, Bethany has failed to state a claim against Defendants upon which relief can be granted.  In short, Bethany fails both to plead a viable claim against Defendants under 42 U.S.C. § 1983 and to sufficiently plead a violation of their First Amendment rights.  Thus, Defendants ask this Court to dismiss Bethany's amended complaint.

### A.    Bethany has failed to plead a viable claim under 42 U.S.C. § 1983 against Defendants.

As will be discussed further below, Bethany's First Amendment rights have not been violated.  But Bethany's claims fail at an earlier, threshold, stage because Bethany has failed to plead a viable claim against Defendants under § 1983.

For a claim under § 1983, a plaintiff must allege conduct by a person acting under color of state law that proximately caused a deprivation of a federally protected right.  *See Summum v. City of Odgen*, 297 F.3d 995, 1000 (10th Cir. 2002).  The plaintiff must "show that the [institutional] action was *taken with the requisite degree of culpability* and must demonstrate *a direct causal link* between the [institutional] action and the deprivation of federal rights."  *Bd. of County Comm'rs. of Bryan County, OK v. Brown*, 520 U.S. 397, 404 (1997) (emphasis added).

And for official-capacity claims, such as those set forth in Bethany's amended complaint, a plaintiff must generally allege that the deprivation of their rights was attributable to a governmental policy or custom.  *See Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 661, 694–695 (1978).  This policy or custom may take the form of an express policy, like a statute, rule or regulation, or policy statement; a "widespread practice that, although not authorized by written law or express [governmental] policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; or the decision of a person with "final policymaking authority."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (cleaned up).  *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–483 (1986).  But no matter how it is stated, this "policy or practice" requisite is often

difficult to satisfy.  *See, e.g., Wimberly v. City of Clovis*, 375 F. Supp. 2d 1120, 1127 (D.N.M. 2004) ("[T]he *Monell* standard is very difficult for any plaintiff to reach.").

But there is a preliminary step in cases where a plaintiff wishes to designate the decision of an official policymaker, as opposed to a formally adopted rule, as the state "custom or policy" that caused their alleged injuries.  Whether an official has final policy-making authority is a legal question that courts decide by looking to state law.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Praprotnik*, 485 U.S. at 124.  Policy-making authority may be bestowed by statute, or it may be delegated by an official possessing policy-making authority under state law.  The plaintiff must identify the policymaker's choice and show that the choice was "a deliberate choice to follow a course of action" that was "made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question."  *Pembaur*, 475 U.S. at 483.  It is not enough that an official has the authority to make discretionary decisions or take discretionary action.  *Id.* at 481–482 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to [governmental] liability based on an exercise of the discretion.")  The *Praprotnik* Court underscored the importance of "finality" to the concept of policy making, and reiterated the distinction set out in *Pembaur* between authority to make final policy and authority to make discretionary decisions.  *Praprotnik*, 485 U.S. at 127.

If a plaintiff seeks to bring a claim against a governmental entity for a subordinate's decision, in order for that decision to be attributable to the government entity, "the authorized policymakers [must] approve [the] decision and the basis for it." *Praprotnik*, 485 U.S. at 127. But "[s]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of authority to make policy." *Id.* at 130.

Finally, the Supreme Court has also acknowledged that "[a]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject [the government] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404. The critical issue is whether the alleged custom or practice was "so well settled and widespread that the policy-making officials of the [government] can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989). While there are no "bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice." *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) (citations omitted).

For the reasons set forth below, Bethany's amended complaint does not identify a policy or custom attributable to Defendants that caused Bethany's alleged injuries. While Bethany's attempts to articulate a policy are unclear and inconsistent, Bethany clearly does not identify an express written policy. Nor does

Bethany meaningfully identify a decision of a final policymaker or a widespread, permanent, or well-settled practice.  Accordingly, Bethany's claims must fail.

> ### 1. Bethany has not identified an express written policy attributable to Defendants.

Bethany's amended complaint does not identify an express policy that caused the alleged deprivation of its First Amendment rights.  That is, it does not identify a statute, rule or regulation, or a written policy statement.  In fact, the amended complaint is less than clear about what "policy" Bethany is challenging.  Rather, as discussed below, Bethany really appears to be challenging a series of discretionary decisions made by non-final-policymakers.  The most common "policy" referenced in the amended complaint is a statement that OGM would "not support" Bethany's hiring and employment practices.  (*See* ECF No. 41, PageID.752, 769, 771–772, ¶¶ 99, 229, 242, 252.)  Thus, Bethany has failed to identify any express governmental policy that caused the deprivation of its constitutional rights.

> ### 2. Bethany has not identified a decision of a person with final policymaking authority that caused the deprivation of its constitutional rights.

Bethany has also failed to state a claim that a decision of a final policymaker established a policy that deprived it of its constitutional rights because Bethany has failed to allege that any Defendant is a final policymaker.  With respect to Defendant Corbin, it is clear that Bethany seeks to impose liability on her because of her title.  But, merely acting in a supervisory capacity or a leadership role is insufficient by itself to give rise to liability.  *Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999.)  The closest Bethany comes to alleging that Corbin is a final policymaker is a general statement speculating that "[a]s the Director of LEO, [she] has final approval over LEO actions, including early termination of LEO contracts." (ECF No. 41, PageID.760, ¶ 151.)  But Bethany cites no supporting legal authority for this statement, nor does it allege that she took any "final approval" action (e.g., signing on behalf of LEO or OGM) on any of the contracts with Bethany.

Bethany also fails to allege that Corbin knew of and approved the basis for any discretionary decision made by a subordinate.  *Praprotnik*, 485 U.S. at 127. Again, Bethany speculates that Corbin knew of alleged actions and decisions by Defendants Hernandez and Cabanaw.  (*See* ECF No. 41, PageID.751–752, 757, 760, ¶¶ 85, 91, 124, 152.)[2]  But again, even if true, "going along with discretionary decisions made by one's subordinates" is insufficient to attribute those decisions to a governmental entity.  *Praprotnik*, 485 U.S. at 130.

As to Defendants Hernandez and Cabanaw, Bethany does not allege that they are final policymakers or that they were delegated such policy-making authority.  Rather, many of the allegations in the amended complaint indicate they are not policymakers, because their alleged actions either needed approval or were

---

[2] Consider one important example of Bethany's speculation.  They allege that Defendants Hernandez and Cabanaw "advanced" the policy that OGM would not support Bethany's hiring and employment practices during a phone call, and that Corbin "agreed with and endorsed" that policy.  (ECF No. 41, PageID.752–753, ¶¶ 99, 103.)  But Bethany does not allege that Corbin was aware of the call or what was discussed during it, or that she was consulted before the call.  These speculative allegations, especially about the alleged policy at the heart of Bethany's claim, fall well short of the *Twombly-Iqbal* standards.

"stymied" by others.  (*See* ECF No. 41, PageID.737, 751–752, 757, 760, 769, ¶¶ 85–86, 90–91, 125, 129, 152, 228–229.)

Instead, Bethany alleges that Defendants Hernandez or Cabanaw made a series of decisions and took a series of actions, and asserts that those are indicative or in furtherance of "their policy of religious discrimination."  (ECF No. 41, PageID.737–739.)  But if every discretionary decision or action constitutes a policy, then there would be no distinction between an action and a policy, contrary to the clear distinction drawn by the Supreme Court in *Praprotnik* between making final policy and making discretionary decisions.  485 U.S. at 127.  Bethany itself asserts that the challenged actions were "purely a matter of discretion."  (ECF No. 41, PageID.773, ¶ 265.)

In sum, Bethany has failed to state a claim that any decision or action by Defendants constituted a final policy that caused the deprivation of Bethany's constitutional rights.

### 3.    Bethany has not otherwise identified a permanent or widespread custom with the force and effect of law that proximately caused its rights to be violated.

Bethany also fails to allege that a widespread, permanent, or well-settled practice with the force and effect of law caused the deprivation of its constitutional rights.  *See Praprotnik*, 485 U.S. at 127 (quotation omitted); *Brown*, 520 U.S. at 404.  Instead, the crux of Bethany's amended complaint is that it is being singled out, and treated in a way that no other grantee has been before, based on Bethany's unique hiring practices.  Bethany speculates that Defendants will discriminate against any

Christian organization that hires individuals who share its faith, but it cites no examples of any such organizations to allow for an inference of a widespread or permanent practice.  (ECF No. 41, PageID.739.)  Instead, Bethany alleges that certain language was inserted into RFPs and grant agreements to exclude only Bethany.  (*Id*., PageID.738, 760–762.)

Bethany asserts there was a policy of animus against its hiring practices, but the context of the allegation focuses on the alleged conduct of two people, not a permanent and widespread practice.  (ECF No. 41, PageID.768, ¶¶ 212–214.)  Finally, the alleged policy of not supporting Bethany's hiring practices cannot be permanent where, as Bethany acknowledges, Bethany was awarded refugee-services grants.  (*Id*., PageID.763, 768, ¶¶ 174, 217.)

In sum, this Court should dismiss Bethany's claims because it has not adequately alleged that the deprivation of its rights was attributable to a governmental policy or custom.  But even if this Court disagrees on this issue, it should still dismiss Bethany's claims because Bethany has failed to adequately plead a violation of its First Amendments rights.

### B.    Bethany has not adequately pled a violation of its First Amendments rights.

Beyond the threshold concerns of Bethany's failure to establish standing and to adequately state a claim under § 1983, Bethany's amended complaint also fails to adequately allege a violation of Bethany's First Amendment rights.  Bethany fails to

allege facts establishing either a free-exercise claim or freedom of association claim, and Bethany's reliance on the ministerial exception is also misplaced.

### 1. Bethany's amended complaint does not adequately state a free-exercise claim.

Counts I through III of Bethany's amended complaint each relate to an element of the same claim—a violation of the First Amendment's Free Exercise Clause. Count III alleges that Defendants burdened Bethany's free-exercise rights by excluding Bethany from an otherwise available government benefit based on Bethany's religious practice. (ECF No. 41, PageID.774, ¶¶ 271–275.) Count II alleges that the policy underlying this burden is not neutral and generally applicable. (*Id.*, PageID.771–773, ¶¶ 250–267.) Finally, Count I alleges that Defendants' purported policy is not neutral because it is specifically targeted at Bethany's religious practice. (*Id.*, PageID.768–771, ¶¶ 233–247.)

Even accepting Bethany's factual allegations as true, Bethany's amended complaint fails to plead a violation of its free-exercise rights. To begin, Bethany fails to adequately allege that Defendants have placed a burden on its religious expression. To the extent that Bethany does adequately allege such a burden, however, this burden was justified by a neutral and generally applicable policy. Finally, Bethany has not pled facts demonstrating that this policy specifically targeted Bethany's religious beliefs or practices. On each of these fronts, Bethany has failed to adequately allege a free-exercise claim.

### a. Bethany has not sufficiently pled a burden on the free exercise of its religious beliefs.

To succeed on a free-exercise claim, Bethany must satisfy the "preliminary inquiry" of showing that the government has burdened the free exercise of its religious beliefs. *See United States v. Lee*, 455 U.S. 252, 256 (1982). Bethany, in its amended complaint, has not made this showing.

Bethany does not allege that Defendants have adopted a policy that either bans religiously-required actions or mandates religiously-prohibited actions. *Cf. Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533–534 (1993) (banning ritual animal sacrifice); *Lee*, 455 U.S. at 254 (requiring compliance with social security). In other words, Bethany does not allege that it is unable to continue enforcing its hiring practices.

Instead, Bethany's free-exercise claim is predicated on the alleged withholding of an otherwise-available government benefit—grant funding—based on Bethany's religiously-motivated hiring practices. (ECF No. 41, PageID.774, ¶ 272 (*quoting Trinity Lutheran Church of Columbia v. Comer*, 582 U.S. 449, 458 (2017)).) Bethany alleges that Defendants have "condition[ed] Bethany Christian's receipt of funding for refugee programs on whether Bethany Christian abandons its religious practice of hiring other Christians" and "are thus excluding Bethany Christian from an otherwise available government benefit because of Bethany Christian's religious identity, beliefs and exercise." (*Id.*, ¶¶ 274–275.)

Bethany's own factual allegations, however, contradict these assertions. Bethany acknowledges that it received reception and placement contracts in 2024

17

from the federal government on OGM's recommendation.  (ECF No. 41, PageID.743, 763 ¶¶ 30, 174.)  Additionally, Bethany acknowledges that OGM directly awarded Bethany six Unaccompanied Refugee Minor (URM) contracts in 2024.  (*Id.*, PageID.768, ¶ 217.)

Thus, Bethany's factual allegations do not support the claimed burden on its free-exercise rights.  Neither Defendants nor OGM generally have conditioned funding on Bethany's abandoning its hiring practices, nor have they excluded Bethany from an otherwise available government benefit.  As a result, Bethany's free-exercise claim fails at the initial, threshold inquiry because it has not adequately pled a burden on its free-exercise rights.

> **b.    Any alleged burden on Bethany's free-exercise rights is justified by a neutral and generally applicable policy.**

The free-exercise clause does not convey an absolute right to engage in religiously-motivated conduct.  *See Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990). This is because the right to free exercise "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  *Id.* (cleaned up).  "[P]ublic authorities may enforce neutral and generally applicable rules and may do so even if they burden faith-based conduct in the process."  *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012).

Here, even if Defendants' alleged actions amounted to a burden on Bethany's free-exercise rights, such burden would be justified by a neutral and generally

applicable policy.  As discussed above, Bethany's amended complaint is vague and inconsistent as to the policy that it challenges as imposing a burden on its free-exercise rights.  At bottom, however, Bethany alleges that Defendants took a series of actions prompted by Bethany's religiously-motivated hiring practices, thereby imposing a burden on Bethany's free-exercise rights.  (*See, e.g.*, ECF No. 41, PageID.771, ¶ 243 ("Defendants' policies and actions have burdened Bethany Christian's religious exercise by making Bethany Christian choose between its religious exercise and federal funding.").)  The root of these alleged actions, according to Bethany, was a conclusion reached by Defendants Hernandez and Cabanaw that OGM would not support Bethany's hiring practices because those practices were discriminatory, in violation of contractual nondiscrimination provisions.  (*Id.*, PageID.751–753, 764, 769, 771–772, ¶¶ 84, 99, 101–102, 179, 229–230, 242, 252.)

A neutral and generally applicable policy, however, prohibits recipients of government contracts from engaging in hiring discrimination.  By law, every government contract in Michigan includes a nondiscrimination agreement by the contract recipient.  *See* Mich. Comp. Laws § 37.2209 ("A contract to which this state, a political subdivision, or an agency of this state or of a political subdivision is a party must contain a covenant by the contractor and the contractor's subcontractors not to discriminate against an . . . applicant for employment with respect to hire . . . because of race, color, religion, national origin, age, sex, sexual orientation, gender identity or expression, height, weight, or marital status.").  As noted by Bethany,

this required provision was included in the refugee services grant agreements between OGM and Bethany.  (Defs' Attach. 1, excerpt from Grant No. RES23-3902, p. 8)[3]; (ECF No. 41, PageID.753, ¶ 106.)  Accordingly, even if Bethany had adequately alleged that Defendants burdened its free-exercise rights by withholding grant funding based on Bethany's hiring practices, such a burden would have been imposed pursuant to this neutral and generally applicable policy.

Bethany, in its amended complaint, seeks to avoid the implications of this neutral and generally applicable policy in two ways—first, through a narrow and circular articulation of the "policy" at issue and, second, by relying on exceptions to other provisions of Michigan's Elliott-Larsen Civil Rights Act (ELCRA).

As to the first, Bethany attempts to cast certain Defendants' specific actions in this case as a "policy" and argues that this "policy" is not neutral or generally applicable.  A few examples of Bethany's articulations of the "policy" at issue illustrate this point:

- "a policy to exclude Bethany Christian from refugee-resettlement-related contracts because of its religious hiring practices," (ECF No 41, PageID.763, ¶ 171);

---

[3] This Court may consider exhibits attached to a motion to dismiss, without converting the motion to a motion for summary judgement, if the attached documents "are referred to in the Complaint and are central to the claims contained therein."  *Elec. Merch. Sys*, 58 F.4th at 883–884.  The contracts for refugee social services are referenced extensively throughout Bethany's amended complaint, and Bethany relies heavily on the alleged early termination of those contracts for its claims.  (*See, e.g.,* ECF No. 41, PageID.751, 753–755, 760, 770–771, ¶¶ 82–84, 106, 108, 111, 148–150, 236, 244.)

- "a policy of animus against Bethany Christian's religious hiring," (*id.*, PageID.767, ¶ 214);

- "a policy that [Defendants] will not support a religious organization that hires co-religionists as a matter of religious belief and thus will not contract with that organization unless that organization is the only option," (*id.*, PageID.772, ¶ 252);

- "a policy that OGM and LEO 'will not support' Bethany Christian's exercise of this constitutional right, and that Bethany Christian will be punished for hiring coreligionists," (*id.*, PageID.777, ¶ 293).

In other words, Bethany essentially argues that the "policy" at issue is a policy of specifically targeting Bethany.  Not surprisingly, Bethany argues that this policy is not neutral or generally applicable.  (*Id.*, PageID.772, ¶ 254.)

Bethany's circular articulation of this "policy" avoids the fact that *all* recipients of government contracts are prohibited from engaging in hiring discrimination.  Defendants did not adopt a "policy" of not supporting Bethany's specific hiring practice requiring affirmance of its religious beliefs as a term and condition of employment.  OGM grant agreements, pursuant to state law, always prohibited hiring discrimination.  This policy is neutral and generally applicable.

Bethany's second attempt to avoid the implications of the contractual nondiscrimination provision relies on exceptions contained within the ELCRA.  Without citing any specific statutory provisions, Bethany alleges that the ELCRA allows "the consideration of 'religion' as part of an affirmative action plan" and

21

"allows discrimination in compensation, terms, conditions, and privileges of employment if based on seniority."  (ECF No. 41, PageID.773, ¶¶ 258–259.)  Because of these individualized exceptions, Bethany asserts that "ELCRA itself is not neutral or generally applicable."  (*Id.*, ¶ 257.)

At issue, however, is not the general nondiscrimination provisions of the ELCRA.  Instead, at issue is whether the contractual nondiscrimination provision, included in all state government contracts, is neutral and generally applicable.  Bethany does not identify any individualized exceptions with the contractual language itself, nor does Bethany identify an exception to the statutory requirement that all state government contracts include such a provision.  By citing inapplicable exceptions, Bethany again seeks to avoid the import of the neutral and generally applicable policy against hiring discrimination for recipients of state contracts.

Finally, Bethany accuses Defendants of "selectively enforcing" the ELCRA, asserting that Defendants "allow other groups to receive grants even though the latter discriminate because of protected categories in their hiring practices and in the client groups they serve."  (ECF No. 41, PageID.773, ¶ 267.)  Nowhere in its lengthy amended complaint does Bethany provide factual support for this assertion.  While Bethany's well-pled allegations must be accepted as true, "conclusory statements" and "naked assertions devoid of further factual enhancement" are not well-pled.  *See Iqbal*, 556 U.S. at 678 (cleaned up).  Accordingly, here too Bethany has failed to demonstrate that Defendants' alleged policy or actions were not taken pursuant to a neutral and generally applicable policy.

### c.    Bethany's factual allegations do not establish targeting.

Bethany also argues that Defendants have specifically targeted Bethany based on religious practice, thereby running afoul of the free-exercise clause.

Bethany is correct that a policy is not neutral and generally applicable if its true intent is the "covert suppression of particular religious beliefs." *Lukumi*, 508 U.S. at 534.  In other words, a facially-neutral policy cannot be "a veiled cover for targeting a belief or a faith-based practice." *Ward*, 667 F.3d at 738.

Here, however, Bethany provides no support for the conclusion that the statutorily required contract provision prohibiting hiring discrimination is a "veiled cover" for targeting Bethany's religiously-motivated hiring practices.  Indeed, because it is statutorily required, Defendants have no discretion in including this contract provision in its grant agreements with Bethany and other providers of refugee services.  Thus, Bethany's claim that this policy was targeted specifically at Bethany's religious practice has no bearing.

Rather than addressing this issue, Bethany again uses circular reasoning to argue that, because Defendants allegedly expressed concern with Bethany's hiring practices and took actions consistent with this concern, Defendants targeted Bethany.  In other words, Bethany argues that "OGM's policy that it will 'not support' Bethany Christian's religious hiring practices" targeted Bethany.  (*See* ECF No. 41, PageID.771, ¶ 241.)

The question, however, is not whether Defendants' alleged actions targeted Bethany, but whether the underlying nondiscrimination policy specifically targeted

Bethany.  If the focus of the free-exercise inquiry were merely whether a defendant took actions detrimental to a plaintiff, then the exception for actions taken pursuant to a neutral and generally applicable would be meaningless.  Because the alleged actions in this case were supported by a neutral and generally applicable policy, Bethany's amended complaint has not adequately pled a free-exercise violation.

### 2.    Bethany's amended complaint also does not adequately state a freedom of association claim.

In Count IV of its complaint, Bethany claims that Defendants' actions infringed on Bethany's First Amendment right to freedom of association.  For several reasons, however, Bethany fails to adequately plead such a claim.

As Bethany correctly recognizes, the right to freedom of expressive association "presupposes a freedom not to associate."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).  Accordingly, the First Amendment protects a group's right to discriminate when the group is engaged in expressive association and the "forced inclusion of unwanted persons . . . affects in a significant way the group's ability to advocate public or private viewpoints."  *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000).

Here, however, there is no "forced inclusion": Bethany does not allege that it is being forced to abandon its hiring practices and hire unwanted employees.  Instead, Bethany alleges that it is being "forced . . . to choose" between its hiring practices and government funding.  (ECF No. 41, PageID.775, ¶ 280.)

24

This distinction, the Supreme Court has held, is significant.  In *Christian Legal Society Chapter of the University of California, Hastings College of the Law v. Martinez*, the Supreme Court distinguished a policy that applied only "indirect pressure" through the withholding of certain benefits from the policies in *Roberts* and *Dale*, which "*compelled* a group to include unwanted members, with no choice to opt out." 561 U.S. 661, 682 (2010).  As the Court noted, "[t]hat the Constitution may compel toleration of private discrimination in some circumstances does not mean that it requires state support for such discrimination." *Id.* at 683 (*quoting Norwood v. Harrison*, 413 U.S. 455, 463 (1973)).  For this reason alone, Bethany's reliance on the freedom of association is misplaced.

Beyond this threshold issue, Bethany's free-exercise claim also fails on the merits.  When analyzing an expressive-association claim, the Sixth Circuit uses a three-part inquiry.  *Miller v. City of Cincinnati*, 622 F.3d 524, 538 (6th Cir. 2010).  First, the court must determine whether the group "is entitled to protection," meaning that it "engages in expressive activity that could be impaired." *Id.* (cleaned up).  Second, the court must "ask whether the government action in question significantly burdens the group's expression, affording deference to an association's view of what would impair its expression." *Id.* (cleaned up).  Third, the court must weigh "the government's interest in any restriction . . . against plaintiff's right of expressive association." *Id.*  Bethany's claim, as pled, fails at each level of this inquiry.

To begin, Bethany has not adequately pled facts establishing that it is an expressive association.  In its amended complaint, Bethany describes itself as a provider of "social services," working in "adoption, foster care, family-based care, family strengthening and counseling, and refugee work."  (ECF No. 41, PageID.741, ¶¶ 13, 16.)  Thus, Bethany self-identifies as primarily a service provider, rather than a group formed "to speak, to worship, [or] to petition the government for the redress of grievances."  *See Roberts*, 468 U.S. at 622.  Indeed, as a recipient of federal DHHS funding, federal law precludes Bethany from using those funds for "explicitly religious activities," including "worship, religious instruction, or proselytization."  45 C.F.R. § 87.3(d).

Nonetheless, Bethany baldly asserts that it is an expressive association because it "has a communicative purpose—to demonstrate the love and compassion of Jesus Christ."  (ECF No. 1, PageID.31, ¶ 190.)  But by this measure, any business that embraces religious values, regardless of the actual functions performed, would be an expressive association.  Beyond merely assigning a "communicative" label, Bethany does not allege facts regarding how Bethany engages in expressive activity protected by the First Amendment.

Similarly, Bethany has not adequately alleged how its purported expressive activity is impaired by a policy against hiring discrimination.  Bethany alleges conclusorily "that only Christians can demonstrate the love and compassion of Jesus Christ," (ECF No. 41, PageID.775, ¶ 282), but while a group's "view of what would impair its expression" is entitled to deference, there still must be some

showing in that regard.  *See Dale*, 530 U.S. at 653.  Bethany has not alleged that hiring persons of other religions (or with no religious affiliation) would impair the services it provides or somehow contradict a message being communicated to its clients.  "[A]n expressive association [cannot] erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message."  *Id.*  Bethany has not pled facts meaningfully supporting its assertion.

Finally, any burden placed on Bethany is outweighed by the governmental interests at issue.  Importantly, "the freedom of expressive association is not absolute; it can be overridden by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."  *Dale*, 530 U.S. at 640–641.  Further, the Supreme Court has noted that a policy preventing discrimination is both "unrelated to the suppression of expression" and "plainly serves compelling state interests of the highest order."  *Roberts*, 468 U.S. at 624.  The purpose served by the policy in this case is even more specific: ensuring that organizations receiving government funding and providing services on behalf of the state are not engaging in hiring discrimination.  This compelling state interest outweighs the ephemeral burden pled in Bethany's complaint.

Because Bethany has not adequately pled a violation of its freedom of association rights, this claim too should be dismissed.

### 3. Bethany's reliance on the ministerial exception is misplaced.

Finally, Bethany relies on the doctrine of church autonomy—and specifically the ministerial exception—to claim an affirmative constitutional right to hire only other Christians.  (ECF No. 41, PageID.776–777, ¶¶ 288–294.)  There are two problems with Bethany's claim.

First, the ministerial exceptions cannot afford Bethany the relief it seeks. The cases on which Bethany relies stand primarily for the proposition that the courts cannot adjudicate employment disputes between religious institutions and their ministers.  *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) ("Under [the ministerial exception], courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions."); *Bryce v Episcopal Church in Diocese of Colo.*, 289 F.3d 648, 655 (10th Cir. 2002) ("This church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity.").  In other words, the doctrine on which Bethany relies serves as a *defense* in civil actions brought against churches.  *See Conlon v InterVarsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015) ("The ministerial exception is an affirmative defense . . . .").

Rather than using this doctrine as a shield, however, Bethany seeks to use it as a sword, claiming an affirmative right to hire only Christians without being penalized in any way for doing so.  But none of the cases on which Bethany relies recognizes an unfettered right of churches or other religious institutions to non-

interference in all hiring and employment decisions.  *Cf. Our Lady of Guadalupe Sch.*, 591 U.S. at 746 (noting that "religious institutions [do not] enjoy a general immunity from secular laws").

Indeed, cases involving the ministerial exception require an in-depth analysis of whether the *specific individual* at issue plays "a vital part in carrying out the mission of the church," such that the exception applies.  *See id.* at 756–757.  This inquiry can include the employee's title, training, use of a ministerial title when interacting with members of the public, and performance of religious functions.  *See Conlon*, 777 F.3d at 834–835.

By contrast, Bethany seeks a blanket declaration that *all* its employees are "ministers" for purposes of the exception, such that Bethany's hiring practices are not only protected from judicial review but also protected from being penalized in any way.  The cases on which Bethany relies cannot be stretched this far.

Second, even if the doctrine of church autonomy generally or the ministerial exception specifically could afford Bethany its requested relief, those doctrines would not apply in this case.  The doctrine of church autonomy protects against intrusion into "matters of church government as well as those of faith and doctrine," while the ministerial exception specifically concerns employment decision involving ministers.  *See Bryce*, 289 F.3d at 655–656.  Here, however, the issue is primarily secular—the hiring practices of a social services provider.  Bethany has not alleged that its employees carry religious titles, have religious training, use ministerial titles when interacting with members of the public, or perform ministerial

29

functions, such as religious teaching or instruction.  *Cf. Conlon*, 777 F.3d at 834–835.  This omission makes sense because Bethany, again, is prohibited from applying DHHS funding toward "explicitly religious activities," such as "worship, religious instruction, or proselytization."  45 C.F.R. § 87.3(d).  Instead, Bethany's employees provide services that are not inherently religious in nature—such as "adoption, foster care, family-based care, family strengthening and counseling, and refugee work."  (*See* ECF No. 41, PageID.741, ¶ 13.)  Bethany alleges that faith motivates its work, (*Id.*, PageID.745–746, ¶¶ 44–53), but it has not adequately alleged that all its employees perform "vital religious duties," such that the doctrine of church autonomy applies to their hiring practices.

Ultimately, the doctrines on which Bethany relies neither afford it the relief it seeks nor apply to these facts.  Accordingly, Bethany's claim must fail.

## CONCLUSION AND RELIEF REQUESTED

Because Bethany has failed to adequately plead standing and to state a claim on which relief can be granted, Defendants respectfully request that this Court dismiss Bethany's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), vacate the Stipulated Preliminary Injunctive Order (ECF No. 35), and award Defendants any appropriate costs and fees.

Respectfully submitted,

*/s/ Gallant Fish*
Gallant Fish (P82196)
Jason Hawkins (P71232)
Assistant Attorneys General
Attorneys for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7641
fishg2@michigan.gov
hawkinsj@michigan.gov

Dated:  January 17, 2025

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of LCivR 7.2(b)(i)

because, excluding the part of the document exempted by said rule, this brief

contains no more than 10,800 words.  This document contains 7,549 words.

2.      In compliance with LCivR 7.3(b)(ii), this document has been prepared

in a proportionally spaced typeface using Microsoft Word for Office 365 in 12-point

Century Schoolbook font.

*/s/ Gallant Fish*
Gallant Fish (P82196)
Assistant Attorney General
Attorney for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7941
fishg2@michigan.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, I electronically filed the above documents with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Gallant Fish
Gallant Fish (P82196)
Assistant Attorney General
Attorney for Defendants
Department of Attorney General
Labor Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7941
fishg2@michigan.gov