UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETHANY CHRISTIAN SERVICES; BETHANY CHRISTIAN SERVICES OF MICHIGAN; and BETHANY CHRISTIAN SERVICES USA, LLC,

Plaintiffs,

v.

SUSAN CORBIN, in her official capacity as director of the MICHIGAN DEPARTMENT OF LABOR AND ECONOMIC OPPORTUNITY; POPPY SIAS HERNANDEZ, in her official capacity as Executive Director of the OFFICE OF GLOBAL MICHIGAN; and BEN CABANAW in his official capacity as Deputy Director of the OFFICE OF GLOBAL MICHIGAN,

Defendants.

/

Case No. 1:24-cv-0922-JMB-PJG

Hon. Jane M. Beckering

# BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND FOR SPOLIATION SANCTIONS

# EXPEDITED CONSIDERATION REQUESTED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ... ii

INTRODUCTION ... 1

BACKGROUND ... 2

Plaintiffs first sought discovery of Cabanaw's text messages in September 2024 ... 2

Plaintiffs' Second Set of Discovery Requests seeks relevant text messages ... 3

Plaintiffs' April 2026 deficiency letter identifies the lack of text messages or internal correspondence in produced documents ... 4

Defendants confirm that there are no relevant text messages on Cabanaw's work or personal phone ... 5

Third-party subpoena responses confirm Defendants had not produced relevant text messages ... 5

Defendants admit that Cabanaw's text messages were destroyed ... 7

ARGUMENT ... 7

I. Defendants should be sanctioned because they allowed the destruction of relevant evidence during the litigation ... 8

A. Defendants had control over Cabanaw's text messages and a duty to preserve them ... 9

B. The deletion of text messages from Cabanaw's phones meets the "culpable mind" requirement, which is satisfied even by mere negligence ... 11

C. The text messages on Cabanaw's phone were relevant and their deletion will prejudice Plaintiffs ... 12

II. Plaintiffs' request for sanctions is appropriate given the inability to recover lost text messages ... 14

CONCLUSION ... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beaven v. U.S. Department of Justice*,
622 F.3d 540 (6th Cir. 2010) ....................9, 12, 14

*Brown v. Barnes*,
2018 WL 4926323 (E.D. Mich. June 25, 2018)....................10

*Byrd v. Alpha Alliance Insurance*,
518 F. App'x 380 (6th Cir. 2013) ....................14

*Capital Senior Living, Inc. v. Barnhiser*,
713 F. Supp. 3d 407 (N.D. Ohio 2024)....................9, 12, 15

*EEOC v. JP Morgan Chase Bank*,
295 F.R.D. 166 (S.D. Ohio 2013) ....................10

*France v. Chippewa County*,
2021 WL 11431784 (WD Mich. Nov. 22, 2021)....................15

*Harper v. Toxicology*,
2013 WL 12109525 (W.D. Mich. Nov. 6, 2013)....................8

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ....................7

*McCarty v. Covol Fuels No. 2, LLC*,
644 F. App'x 372 (6th Cir. 2016) ....................9, 11

*In re Napster, Inc. Copyright Litigation*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................10

*State Farm Mutual Automobile Insurance Co. v. Precious Physical Therapy, Inc.*,
2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) ....................9

*United Precision Products Co. v. Avco Corp.*,
2010 WL 11545038 (E.D. Mich. July 26, 2010) ....................10

**Rules**

Federal Rule of Civil Procedure 37 ....................1, 8, 13, 15

# INTRODUCTION

For the past two years, Defendants have assured Plaintiffs that no relevant text messages from Defendant Ben Cabanaw's electronic devices existed. Today, Cabanaw admitted that he intentionally deleted text messages regarding this lawsuit while it was pending.[1]

The text messages' existence was not confirmed until Plaintiffs, after months of requests for reassurance that there were no text messages (including through a deficiency letter in April 2026), obtained them through non-party subpoenas. The documents produced by the non-parties proved that Cabanaw had texted repeatedly about Bethany and material issues in this case on his work and personal phones from 2023 until (at least) late 2025. Defendants falsely denied the existence of these documents and have failed to produce them (or apparently even preserve them) for two years. Worse still, Defendants now acknowledge that they deleted the text messages *during the litigation*. Defendants finally had to admit that (1) Cabanaw intentionally deleted messages (2) Cabanaw had an auto-delete function on his personal phone, which deleted all text messages over a year old that he hadn't manually culled because the auto-delete function was never disabled; and (3) Cabanaw's State of Michigan work cell phone was "purged" after Cabanaw received a new phone, deleting all text messages. In other words, even though Defendants had a duty to preserve and produce relevant documents since at least September of 2024, they did not do so and instead intentionally destroyed relevant communications.

Plaintiffs ask that the Court impose the following sanctions for the spoliation of evidence under Federal Rule of Civil Procedure 37(e):

---

[1] Cabanaw admitted this during his August 14 deposition. Plaintiffs will file the transcript as soon as possible.

(1) An adverse inference that the contents of the now-unavailable text messages on Cabanaw's personal and work phones would have been detrimental to the State's defense;

(2) A ruling deeming third-party accounts of Cabanaw's statements admissible evidence and accurate representations of those statements and deeming that Cabanaw followed through on the plans he outlined to third parties;

(3) Compelling a forensic imaging of Cabanaw's electronic devices and appointment of a neutral third party to review the contents of the devices to screen for privilege and relevance at Defendants' expense;

(4) Directing Defendants to identify under oath the efforts that they have undertaken to preserve and produce relevant documents from the work and personal cell phones of the other Defendants and the employees in the Office of Global Michigan; and

(5) Shifting Plaintiffs' fees and costs for this Motion and efforts to obtain Cabanaw's text messages to Defendants for their malfeasance in the intentional destruction and failure to preserve and produce relevant documents despite repeated requests from Plaintiffs and repeated false assurances that the documents did not exist.

## BACKGROUND

### Plaintiffs first sought discovery of Cabanaw's text messages in September 2024.

Plaintiffs' efforts to obtain Cabanaw's relevant text communications began with Plaintiffs' first discovery requests, served September 10, 2024. (*See* Ex. A, Defs.' Answers to First Disc. Reqs.) Requests to Produce Nos. 1 and 2 requested all communications and correspondence sent or received by OGM's Director and Deputy Director from July 1, 2023, to the present, whether transmitted through personal or State-owned devices, regarding Bethany, its

status or performance as a CWS subcontractor, and/or its employment practices. (*Id.* at 8-9.) Defendants answered those requests on September 17, 2024, by stating that responsive, nonprivileged, nonduplicative records gathered to date were located in a OneDrive folder provided to Bethany's counsel. (*Id.*) But those documents did not include any text messages from Cabanaw even though it is now clear that there were numerous responsive text messages.

**Plaintiffs' Second Set of Discovery Requests seeks relevant text messages.**

After the preliminary injunction expired, Plaintiffs served additional discovery in September 2025, that defined "document" to include records of telephone calls, personal conversations, voicemail or phone-mail messages, text messages, instant messages, and deleted or archived electronic records. (*See* Ex. B, Defs.' Answers to Second Set of Disc. Reqs.) Interrogatory No. 9 sought communications between November 1 and December 31, 2023 involving Cabanaw and relating to Bethany's hiring practices; Request for Production No. 2 sought documents relating to those communications; and Request for Production No. 5 sought communications sent or received by Defendants or their direct reports from October 1, 2024 to the present, whether transmitted through personal or state-owned devices, relating to Bethany, the lawsuit, or the factual circumstances identified in the Complaint or Answer. (*See id.*) Around the same time, Cabanaw ordered his new state-issued cell phone.

Defendants responded and represented that documents responsive to the claims and issues raised in the Second Amended Complaint had been produced at Cabanaw's October 2025 deposition and in a OneDrive folder. The deposition occurred just days after he received his new phone.[2] For Request No. 2, Defendants responded "that upon information and belief these

[2] Cabanaw testified today that he put his old state-issued phone in a drawer because he knew he needed to preserve it.

documents have already been produced." (*Id.* at 24.) For Request No. 5, Defendants stated that relevant communications would be searched under the direction of the Michigan Department of Technology, Management, and Budget ("DTMB") and reviewed for responsiveness and privilege. (*Id.* at 28.) No text messages were produced.

Cabanaw signed the discovery responses on behalf of Defendants. (*See* Ex. C, Defs.' Am. Resp. to Second Set of Disc. Reqs. 36.)

**Plaintiffs' April 2026 deficiency letter identifies the lack of text messages or internal correspondence in produced documents.**

Upon reviewing the produced documents, the absence of text messages became apparent, particularly given the abrupt termination of email correspondence regarding Bethany and its hiring practices in mid-January 2024. Suspecting that text messages were being withheld, Plaintiffs sent Defendants a deficiency letter on April 28, 2026, raising the issue of the missing text messages. (*See* Ex. D, Deficiency Letter.) Plaintiffs pointed out that Cabanaw testified in his October 2025 deposition (one month before his state cell phone was purportedly purged) that there had been text messages sent about this matter. (ECF No.172-6, PageID.2580.) Nonetheless, Defendants still had not produced internal messaging-platform communications, text messages from state-owned devices, or communications from Corbin's, Sias-Hernandez's, or Cabanaw's personal devices. Plaintiffs asked Defendants to conduct renewed searches of personal and state-controlled email addresses and all defined Electronic Communications from June 1, 2023, to the present, as well as identification of any communication no longer in Defendants' possession, custody, or control because of deletion or any other reason. (Ex. D.) Defendants declined.

**Defendants confirm that there are no relevant text messages on Cabanaw's work or personal phone.**

In June 2026, Plaintiffs asked Defendants to address their concerns about missing text messages. Defendants doggedly held to their position that there were no responsive text messages even after responsive text messages from Cabanaw were obtained from third parties. (*See* ECF No.172-5, PageID.2557 *et seq*; Ex. E, Texts with Martinez.) Defendants assured Plaintiffs:

> As to text messages, prior counsel confirmed in September 2024 that Defendants had no responsive text messages. The text message you identified does not, by itself, establish otherwise, and it certainly does not establish spoliation. . . . If Plaintiffs have evidence of additional responsive text messages that were not produced, please identify and produce that evidence. Otherwise, please confirm whether Plaintiffs' position is based solely on the materials already identified. [*See* PageID.2559-2560.]

This was simply not true.

**Third-party subpoena responses confirm Defendants had not produced relevant text messages.**

In July 2026, Plaintiffs received third-party subpoena responses. These productions included various text-message chains with Cabanaw discussing Bethany, such as the following:







AH_0000424

(Ex. F, 12/13/23 Texts with Abdou.)

Thus, Defendants had misled Plaintiffs regarding the existence of text messages and had failed to produce them. In fact, the texts that Plaintiffs obtained by subpoena proved that Cabanaw *knew* that text messages were discoverable, as he told the recipient that he would not "reply to this in writing just now" with a winking emoji. (*Id.*) Plaintiffs asked Defendants to confirm whether those text messages were still in existence on Cabanaw's phones. (*See* Ex. G, 08/01/26 Email.) They were not—Cabanaw had deleted them.

**Defendants admit that Cabanaw's text messages were destroyed.**

During an August 11, 2026 meet-and-confer call, Defendants told Plaintiffs that Cabanaw had an auto-delete function on his personal phone, which deleted all text messages over a year old. In a follow-on email, Defendants' counsel then admitted that Cabanaw's state phone was wiped in November 2025, deleting all text messages. (*See* Ex. H, 08/11/26 Emails.) When Plaintiffs sought concurrence to file this motion, Defendants declined. (*Id.*) When Plaintiffs requested a copy of the litigation-hold notice issued in this case, Defendants did not respond suggesting that no such notice was ever issued. Cabanaw admitted today in his deposition that he *manually deleted* all his texts with Dilli Gautam on his personal phone.

## ARGUMENT

With less than 20 days of discovery remaining, Defendants have finally admitted that they failed to preserve and produce relevant text messages from Cabanaw and have given no assurances regarding the other Defendants' devices. Instead, Cabanaw has intentionally destroyed evidence. This spoliation is particularly concerning because Plaintiffs allege that Cabanaw was the main actor driving the violation of Bethany's constitutional rights. The loss of these documents deprives Plaintiffs (and this Court) of the chance to view and assess critical evidence; evidence that federal law expressly requires Defendants to retain. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'").

Federal Rule of Civil Procedure 37(e) states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> A. presume that the lost information was unfavorable to the party;
> B. instruct the jury that it may or must presume the information was unfavorable to the party; or
> C. dismiss the action or enter default judgment.

Here, sanctions, including an adverse inference in Bethany's favor, are appropriate, where at least one Defendant destroyed relevant evidence after the lawsuit was filed. Plaintiffs request spoliation sanctions and expedited consideration of their motion.

## I. Defendants should be sanctioned because they allowed the destruction of relevant evidence during the litigation.

Bethany is requesting, at a minimum, an adverse inference due to Defendants' failure to preserve and active destruction of relevant evidence in the form of Defendant Cabanaw's personal and work phone text messages. This Court explained that "a litigant's failure to preserve relevant evidence can lead to the imposition of significant sanctions for spoliation." *Harper v. Toxicology*, 2013 WL 12109525, at *1 (W.D. Mich. Nov. 6, 2013) (citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (cleaned up)).

Sanctions for such conduct are proper here because (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the accused party destroyed the evidence with a culpable state of mind; and (3) the evidence destroyed is relevant

to the other side's claim or defense. *See McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 378 (6th Cir. 2016).

### A. Defendants had control over Cabanaw's text messages and a duty to preserve them.

At all relevant times Defendants had control over Cabanaw's cellphones and had the ability to preserve relevant documents contained therein. Indeed, the cell phones were in Defendant Cabanaw's daily possession—his control over his own devices is beyond cavil.

Defendants exercised control over Cabanaw's work cell phone by its "work" nature and their admission that in November 2025, the device was "upgraded" by the State which then purged all electronic information on the device. Additionally, an employer has control over an employee's personal device where that device is used for work purposes. *See State Farm Mutual Automobile Insurance Co. v. Precious Physical Therapy, Inc.*, 2020 WL 7056039, at *6, n4 (E.D. Mich. Dec. 2, 2020) (holding that whether responsive communications are in personal rather than "official" or "work" accounts "is of no moment."); *Cap. Senior Living, Inc. v. Barnhiser*, 713 F. Supp. 3d 407, 414-15 (N.D. Ohio 2024) (finding that "both [the employer and the employee] had a duty to ensure that the text messages were preserved and not deleted."). Cabanaw testified in his deposition that he used his personal phone for work-related business. (ECF No. 172-6, PageID.2580.) Therefore, the control is present here for both devices.

In addition to control, Defendants (including Cabanaw) had a duty to preserve relevant text messages on Cabanaw's phones. As the Sixth Circuit recognized, the "obligation to preserve [evidence] may arise 'when a party should have known that the evidence may be relevant to future litigation[.]'" *Beaven*, 622 F.3d at 553. At a minimum, Defendants were on notice that the text messages on Cabanaw's phone would be relevant to the litigation when they received the Complaint which detailed Plaintiff's allegations against Defendants, including that Cabanaw

intentionally conspired with Hernandez to deprive Bethany of their contracts due to their religious practice. Cabanaw himself and the Defendants generally were on notice of their duty to preserve no later than September 12, 2024, when Defendants executed and filed the waiver of service (PageID.382 and PageID.383) but likely earlier given Defendants' repeated contention that they could not respond to Bethany's inquiries about the contracting process because of the involvement of lawyers, and therefore potential litigation. (*See* Answer to Second Am. Compl. ¶¶ 122, 181, 183-187, 189, 191, 193-197, 199, 208, 214, ECF No. 80, PageID.1482, 1503-1508, 1511-1512.) *See, e.g.*, *Brown v. Barnes*, 2018 WL 4926323, at *10 (E.D. Mich. June 25, 2018), *R&R adopted sub nom. Brown v. Rivard*, 2018 WL 4907706 (E.D. Mich. Oct. 10, 2018), *aff'd sub nom. Brown v. McCullick*, 2019 WL 5436159 (6th Cir. Apr. 23, 2019).

Once Defendants were on notice, they had an obligation to make sure no relevant documents were lost or destroyed, regardless of any "scheduled" or "automatic" deletion features. This duty is not new or novel; it was established two decades ago. *See, e.g.*, *EEOC v. JP Morgan Chase Bank*, 295 F.R.D. 166, 173 (S.D. Ohio 2013) (employer not insulated from spoliation sanctions where the destruction of the evidence at issue was part of the employer's "routine purge" of electronic records); *United Precision Prod. Co. v. Avco Corp.*, 2010 WL 11545038, at *6 (E.D. Mich. July 26, 2010) ("The duty to preserve evidence arises when a party reasonably anticipates litigation**, at which time the party must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.**" (emphasis added)); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (Once the duty to preserve attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation."). By failing to suspend Cabanaw's auto-delete function, much less

preventing him from intentionally deleting texts, Defendants failed to preserve the evidence. Equally (and perhaps more importantly), Defendants were certainly obligated to exercise additional caution in late 2025 when DTMB updated Cabanaw's work phone—just a month after he testified that he had *a state-issued cell phone that he used for texting*—such as by ensuring that even if the phone were "purged" a forensic image or backup existed, or not wiping the phone at all. And certainly, Cabanaw's intentional, manual deletion of his relevant text messages is inexcusable.

### B. The deletion of text messages from Cabanaw's phones meets the "culpable mind" requirement, which is satisfied even by mere negligence.

With respect to the second requirement for sanctions that the evidence was destroyed with a "culpable mind," it is sufficient to show that the accused party's actions with respect to the disputed evidence were, at least, negligent. *McCarty*, 644 F. App'x at 378. ("The culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." (cleaned up)). Here, Cabanaw and the other Defendants were grossly negligent and in Cabanaw's case, contumacious. Their failure to preserve text messages on Cabanaw's work and personal phones following service of this lawsuit is surprising given the sophistication of the State and its counsel and their representations. Further, text messages from Cabanaw and his testimony today demonstrate his understanding that he had a duty to preserve his messages but deleted them nonetheless. (*See* Ex. F.)

### C. The text messages on Cabanaw's phone were relevant and their deletion will prejudice Plaintiffs.

Finally, both the text messages on Cabanaw's work phone and personal phone were relevant. To meet the relevance requirement, a party seeking spoliation sanctions must simply make "some showing indicating that the destroyed evidence would have been relevant to the contested issue." *Beaven*, 622 F.3d at 554. The text messages on Cabanaw's phone contained crucial information regarding Cabanaw's discussions with third parties and his co-defendants regarding his reasons for moving OGM's contracts away from Bethany. Cabanaw and OGM's rationale for OGM's RFP process and contract modifications is a key issue as to whether the Defendants unlawfully discriminated against Bethany. In one text thread between Hedy Abdou[3] and Cabanaw on December 13, 2023, they discuss the implications of OGM "sever[ing] ties with Bethany," long before OGM reissued RFPs mid-cycle and re-allocated Bethany's contracts to a different provider. (*See* Ex. F.) The absence of these and other text messages is prejudicial to Plaintiffs because it deprives Plaintiffs of evidence that supports its case. *See Cap. Senior Living, Inc.*, 713 F. Supp. 3d at 419 (granting adverse inference because forensic testing showed that the party intentionally deleted relevant text messages.)

When the court is examining the potential spoliation of text messages, their relevance and prejudice can be determined by looking at text messages that were *not* destroyed. Other text messages that are available can provide a glimpse into what the spoliated text messages may have contained. *See id.* at 417 (three extant text messages provide a reasonable basis "to infer that at least some of the destroyed messages would have contained similar content").

[3] Plaintiffs cannot obtain the text messages from Abdou because she resides in Egypt which has not acceded to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

Here, the text messages obtained from third parties prove that Cabanaw was discussing plans to replace Bethany as early as December 2023. (*See* Ex. F.) Likewise, a voicemail produced by another third party demonstrates Cabanaw was telling third parties of his plan to make "the eligibility requirements so strict that Bethany would not be eligible. Anyone is welcome to apply, but he [Cabanaw] basically said that even if Bethany were to apply, Bethany would not be awarded that grant." (*See* Ex. I, 4/9/24 Voicemail from Abdou to Halilovic.) Additionally, documents produced by Church World Service and other third parties confirm that Cabanaw was openly discussing his plans to take action to end Bethany's contracts because of its religious hiring practices. Contemporaneous notes from phone calls between January and April 2024 recount how Cabanaw told multiple CWS employees it was his "intention – 100% - to end [OGM's] partnership [with Bethany] by FY25," that he "really wants CWS to be a partner agency in the state of Michigan," that OGM would be "[d]rafting new Requests for Proposals" and "work[ing] in more clear DEI language for all partners, including some specifics around hiring practices" in line with "program expectations" regarding "hiring individuals that we represent." (*See* CWS Documents, ECF No.172-1, PageID.2378.) Cabanaw also told CWS that "the State had decided to share RFPs for RSS contracts that BCS currently holds statewide," and that he "anticipated that all of these contracts will be awarded to another provider." (*Id.* at PageID.2469-70.) This supports a spoliation inference that deleted text messages would have demonstrated similar targeting. At the very least, the prejudice to Plaintiffs' warrants action pursuant to Rule 37(e)(1).

## II. Plaintiffs' request for sanctions is appropriate given the inability to recover lost text messages.

Where sanctions are appropriate, the Sixth Circuit has held that "a district court [may] impose many different kinds of sanctions . . . including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Byrd v. Alpha Alliance Ins.*, 518 F. App'x 380, 386 (6th Cir. 2013) (cleaned up). An adverse inference instruction is appropriate where a moving party can show the three criteria outlined above. *See Beaven*, 622 F.3d at 553.

As discussed above, Plaintiffs have made such a showing. Thus, Plaintiffs are entitled to (1) an adverse inference that the content of the text messages was beneficial to Plaintiffs' case, and by extension, detrimental to Defendants' defense; and (2) an inference that the third-party accounts of Cabanaw's statements discussed above are accurate representations Cabanaw's statements and further deem that Cabanaw did in fact follow through on the plans he outlined to third-parties.

Plaintiffs also request an order (1) directing Cabanaw's work and personal cellular devices be forensically imaged and reviewed by a neutral third-party to screen for privilege and identify materials responsive to Plaintiffs' discovery requests, including text messages related to Plaintiffs; (2) requiring Defendants to pay the costs of forensic imaging and screening; (3) directing Defendants to identify under oath the efforts that they have undertaken to preserve and produce relevant documents from the work and personal cell phones of the other Defendants and OGM employees; (4) awarding attorney fees incurred by Plaintiffs in connection with this motion and the pursuit of the text messages despite the string of false assurances from Defendants.

The request for imaging is appropriate because Plaintiffs have "demonstrate[d] . . . that evidence has been destroyed or a 'real danger' that it will be." *France v. Chippewa Cnty.*, 2021 WL 11431784, at *1 (WD Mich. Nov. 22, 2021) (citing *John B.*, 531 F.3d at 450). Specifically, Defendants have withheld relevant information and then failed to preserve it by allowing its deletion more than a year after the commencement of litigation – or by manually deleting text threads. Forensic imaging of Cabanaw's work and personal phones can be tailored to include only a review of text messages and voicemail. *See id.* at *2-*3 (granting a similar request for the forensic examination of personal cell phones of named defendants, who were a county employee and former employee). Likewise, Defendants should bear these costs, because it is Defendants' conduct that necessitates the imaging. *Id.* at *3 (shifting costs because "the imaging has been made necessary by Defendant['s] conduct in deleting messages that they were specifically directed to preserve.") And finally, fees are warranted as provided under Rule 37(a)(5)(A). *Cap. Senior Living*, 713 F. Supp. 3d at 419 (awarding movant fees and "costs it incurred related to the forensic examination of Barnhiser's phone, its attorneys' fees associated with all discovery related to the dispute over Barnhiser's phone, and the attorney fees and costs it incurred in bringing its motion for sanctions.").

## CONCLUSION

For the above reasons, Plaintiffs respectfully request spoliation sanctions for Defendants' intentional deletion of text messages and any other relief this Court deems appropriate.

WARNER NORCROSS + JUDD LLP

Dated: August 14, 2026

*/s/ Matthew T. Nelson*
Jonathan E. Lauderbach (P51313)
Matthew T. Nelson (P64768)

Daniel S. Brookins (P86665)
Katrin B. Kelley (P88133)
WARNER NORCROSS + JUDD LLP
150 Ottawa Ave. NW, Ste. 1500
Grand Rapids, MI 49503
jlauderbach@wnj.com
mnelson@wnj.com
dbrookins@wnj.com
kkelley@wnj.com

Lori D. Kepner
Steven T. McFarland
Center For Law & Religious Freedom
CHRISTIAN LEGAL SOCIETY
8001 Braddock Road, Suite 302
Springfield, VA 22151

*Attorneys for Plaintiffs Bethany Christian Services, Bethany Christian Services of Michigan, and Bethany Christian Services USA, LLC*