UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETHANY CHRISTIAN SERVICES; BETHANY CHRISTIAN SERVICES OF MICHIGAN; and BETHANY CHRISTIAN SERVICES USA, LLC,

Plaintiffs,

v.

SUSAN CORBIN, in her official capacity as director of the MICHIGAN DEPARTMENT OF LABOR AND ECONOMIC OPPORTUNITY; POPPY SIAS HERNANDEZ, in her official capacity as Executive Director of the OFFICE OF GLOBAL MICHIGAN, and BEN CABANAW, in his official capacity as Deputy Director of the OFFICE OF GLOBAL MICHIGAN.

Defendants.

Case No. 1:24-cv-0922-JMB-PJG

HON. JANE M. BECKERING

MAG. JUDGE PHILLIP J. GREEN

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL RULE 30(b)(6) DEPOSITION AND EXPEDITED CONSIDERATION**

Marla Linderman Richelew
Assistant Attorney General
Attorney for Defendants
Civil Rights & Special Initiatives
3030 W. Grand Boulevard, 10th Floor
Detroit, MI 48202
(313) 456-0200
lindermanrichelewm@michigan.gov
P55759

Dated: August 28, 2026

# TABLE OF CONTENTS

Page


Table of Contents ..... i

Introduction ..... 1

Statement of Facts ..... 2

I. The First 30(b)(6) deposition ..... 2

II. The current 30(b)(6) deposition notice. ..... 3

III. The August 13, 2026 deposition. ..... 5

IV. Defendants' attempts to continue the deposition with properly identified witnesses for the remaining topics. ..... 6

Argument ..... 7

I. Plaintiffs waived their objections and failed to produce witnesses on properly noticed topics. ..... 7

A. Plaintiffs did not object to largely identical topics in the October 24, 2025 30(b)(6) notice and previously agreed to a second deposition on these topics. ..... 7

B. Failing to obey court rules does not provide Plaintiffs with a third opportunity to object to the 30(b)(6) deposition. ..... 8

II. The witnesses Plaintiffs produced were not prepared, which is the same as producing no witness at all. ..... 10

III. Plaintiffs stopped the deposition to get instruction from the Court but never followed through as required by the court rules. ..... 12

IV. Defendants' topics were proper. ..... 13

V. *Stryker* is distinguishable. ..... 14

Conclusion and Relief Requested ..... 16

Certificate of Service ..... 17

## INTRODUCTION

On July 14, 2026, Defendants served deposition notice on all Plaintiffs pursuant to Federal Rule of Civil Procedure 30(b)(6), listing eleven topics. On August 13, 2026, Plaintiffs produced two witnesses in response to the notice, but these witnesses agreed to testify to less than five of the identified topics and, even as to those topics, admitted they had limited knowledge.

The parties have trudged through discovery over the last few months. Now, at the eleventh hour of this grueling effort, Plaintiffs have taken a stand against allowing deposition testimony on the properly noticed 30(b)(6) topics. But this stand is legally unsupported and shields evidence that Defendants need for their defense in this case. Plaintiffs cannot be allowed to produce witnesses only to testify to evidence they think is favorable, while withholding testimony on topics supporting Defendants. The Court should grant this motion and direct Plaintiffs to comply with their discovery obligations under Federal Rule of Civil Procedure 30(b)(6).

## STATEMENT OF FACTS

### I. The First 30(b)(6) deposition.

Defendants noticed and took a 30(b)(6) deposition of Plaintiffs on October 24, 2025. (Ex. A., 10/24/25 Dep. Tr.) That notice listed ten topics and Plaintiffs objected to none of them. (Ex. B, 10/20/25 30(b)(6) Dep. Notice.) At the start of the deposition, Defendants agreed to limit the questions to topics related to Plaintiffs' First Amendment targeting claim, the sole basis of the preliminary injunction motion. (Ex. A, 10/24/25 Dep. Tr. pp. 8-9, 16-17, 20-21). In exchange, Plaintiffs' counsel agreed on the record that Defendants could take a second 30(b)(6) deposition on other topics in the future. (*Id.* at 16:12–16:22.) Relevant to this motion, Plaintiffs did not object to any Defendants' identified topics, including:

1. Plaintiffs' factual basis and supporting documentation' that Defendants have targeted Plaintiffs and burdened Plaintiffs' religious exercise based on Plaintiffs' religious beliefs. The witness should be the most knowledgeable as to all of Plaintiffs' facts and claims that support Counts I-IV of Plaintiffs' Second Amended Complaint and the facts and claims made in Plaintiffs' Renewed Motion for Preliminary Injunction as to Plaintiffs' likelihood of success.

2. Plaintiffs' factual basis and supporting documentation that Defendants have retaliated against Plaintiffs' based on its first amendment protected petition acts. The witness should be the most knowledgeable as to all of Plaintiffs' facts and claims that support Count VI of Plaintiffs' Second Amended Complaint and be able to authenticate all supporting documents.

3. Plaintiffs' 2023, 2024, and 2025 bids for all contracts listed in the stipulated preliminary injunction as well as RYM (2026) and RTS (2026) bids, including the factual basis and supporting documentation regarding the substance of each bid, the names and level of input of the bid's drafters, and authentication of the bids and any documents relating to the bidding or awarding processes.

4. Plaintiffs' performance of its RES, RPRS, RTS and RYM contracts between October 1, 2023, and September 25, 2025, including but not limited to all entries made by Plaintiffs into OGM's Salesforce platform during this time period, the number of refugees helped during this time period under each contract, and the costs charged to OGM under each of these contracts.

5. Plaintiffs' relationship with Church World Services and the ending of its contractor and subcontractor relationship, including authentication of any related documents.

## II. The current 30(b)(6) deposition notice.

On July 13, 2026, Defendants offered Plaintiffs a choice of deposition dates during the last week of July or a date in early August, if allowed to send document requests[1]. (Exhibit C, 7/13/26 email). On July 14, 2026, Defendants served the second 30(b)(6) notice, setting the deposition for July 30, 2026 to get it on the calendar. (Ex. D 7/14/26 notice). The notice included topics in issue summarized as follows:

a. the statement of faith policy and its operation, from 2022 to present, including how it is applied in hiring, promotion, retention, and the daily workplace — including any exceptions or waivers and the basis for granting or denying them.

b. the application and effects of the Advocacy and Activism policy, since 2021;

c. The drafting, submission, substance, and scoring of BCSM's refugee-services bids from 2023 to the present including the factual basis and supporting documentation for any contention that a score was pretextual;

d. BCSM's performance under its RSS, RES, RPRS, RTS, and RYM program contracts from October 1, 2022, through October 31, 2025, including self-monitoring reports, corrective action plans, and data reporting;

[1] Discovery closes on August 31, 2026, so the last day to send document requests was August 1 unless the parties agreed to a later date.

> e. How BCSM decided whether and when to bill the URM or RYM program when providing mentoring services to URM youths;
>
> f, g, h, and j. "factual basis and supporting documentation" for Counts II, III, IV and VI, with the witness prepared to " authenticate all supporting documents."

(*Id.*)

Plaintiffs did not object to the notice, did not move for a protective order, and did not produce their 30(b)(6) witness on July 30, 2026. Instead, Plaintiffs responded a week later, stating that they would not produce their 30(b)(6) witnesses until the last week of discovery, approximately a month later. (Ex. E, 7/21/26 Brookins email). The parties met and conferred and Defendants offered other dates, but Plaintiffs were unwilling to produce their witnesses earlier.

On July 30, 2026, after the time set for the deposition, Plaintiffs sent an email offering to produce their witnesses on August 13, 2026. (Ex. F, 7/30/26 Brookins email). On August 4, 2026, accommodating Plaintiffs' request, Defendants re-noticed the deposition to August 13, 2026, listing the two witnesses Plaintiffs identified: Annie Osburn and Scott DeVries. (Ex. G, 8/4/26 Dep. Notice.)

Plaintiffs objected to the notice's topics for the first time on August 11, two days before the deposition was scheduled and four weeks after the deposition was first noticed. (Ex. H, 8/11/26 Brookins email). That same day, Defendants' counsel responded, offering to revise revising topics (c), (f), (g), (h), and (j), and drop topic (i). (Ex. I, 8/11/26 Barranco 4:45p email). Plaintiffs rejected the compromise and still did not seek a protective order. (Ex I., 8/12/26 Brookins 12:28p email.)

### III. The August 13, 2026 deposition.

Defendants' counsel appeared for the deposition on August 13, 2026. Plaintiffs produced Ms. Osburn for topics (a) and (b) only. (Ex. J, Osburn Dep. Tr. 12:8, 14:20-22.) They produced Mr. DeVries for topics (e) and (k) and for a limited portion of topic (c)—"generally…the process by which bids are prepared and submitted" as opposed the specific bids at issue in this case. (*Id.* at 117:1-3; Ex. K, DeVries Dep. Tr. 13:24-14:6, 17:22-18.7.) Plaintiffs produced no one for topics (d), (f), (g), (h), and (j), and the rest of topic (c).

Worse, Plaintiffs' 30(b)(6) deponents were unprepared to testify even where Plaintiffs raised no objections. For example, topic (e) asked how BCSM decided "whether and when to bill the URM or RYM program when providing mentoring services to URM youths." Plaintiffs designated DeVries on this topic without objection. Asked the topic's question verbatim, DeVries described general cost-segregation practice, then conceded he did not know why BCSM billed the RYM contract for URM mentoring; did not know whether BCSM double-billed OGM for the same services for the same youth for the same day, under both contracts, and, when pressed, answered, "I'm not able to speak to that question." (Ex. K, DeVries Dep. pp. 51:19-21; 52:9-53:15; 54:21-24). DeVries also could not identify anyone who could answer the topic's question, saying only that he "would have to go back and look to see who those directors would be." (*Id.* at 54:21-55:4.) DeVries also admitted that he had not even read the contracts that govern URM or RYM between BCSM and Defendants. (*Id.* at 51:19-52:14).

Ms. Osburn's testimony left the same kind of gap. Topic (a) required a witness prepared to testify about the statement of faith, including "exceptions or waivers and the basis for granting or denying them." Ms. Osburn testified 12 exceptions were granted, that four were granted in Michigan, but she could not say who received them, could not say whether any went to refugee and immigrant services, and did not know how many were denied. (Ex. J, Osburn Dep. pp. 58:25-59:7, 72:6-9). She had not checked before the deposition. (*Id.*; see also 71:8-17.) BCS Inc.'s December 2023 HR email put the number of BCS USA employees without a signed statement of faith at roughly 109. (Ex. L-12/4/23 Shirley Ex. O).

## IV. Defendants' attempts to continue the deposition with properly identified witnesses for the remaining topics.

On August 15, 2026, Plaintiffs' counsel emailed Defendants indicating Plaintiffs were willing to respond to topics (c)(4), (f), (g), (h), and (j) in writing as if they were interrogatories. (Ex. M, 8/15/26 10:20a email.) Plaintiffs did not address topic (d) despite not producing a witness for this topic at the August 13th deposition. In response, Defendants again reiterated the need for deposition testimony—not counsel drafted interrogatory responses—and again offered to the revised topics for (c), (f), (g), (h), and (j). (*Id.* 8/19/26 10:46a email.) Plaintiffs rejected this offer and continued to contest further deposition testimony on the unanswered topics. (*Id.* 8/19/26 2:51p email; 8/19/26 8:03 pm, 8/21/26 3:12p email.) Given Plaintiffs' refusal to produce a witness on the unanswered topics, Defendants were forced to file this motion.

## ARGUMENT

### I. Plaintiffs waived their objections and failed to produce witnesses on properly noticed topics.

Rule 30(b)(6) lets a party notice the deposition of an organization on topics "describe[d] with reasonable particularity." Fed. R. Civ. Proc. 30(b)(6). The organization must then designate one or more persons to testify on its behalf and must prepare them to "testify about information known or reasonably available to the organization." *Id.*

#### A. Plaintiffs did not object to largely identical topics in the October 24, 2025 30(b)(6) notice and previously agreed to a second deposition on these topics.

On October 25, 2025, in exchange for Defendants' agreement to limit that day's deposition to Count I, Plaintiffs agreed on the record that Defendants could take a second 30(b)(6) deposition. (Ex. A, October 24 Dep Tr. 16:12-22). The parties made that agreement knowing that some testimony would overlap other counts and understood the overlap would not limit the second deposition. (*Id.* at 8:16-9:6; 16:12-22). At no time did Plaintiffs object to any of the noticed 30(b)(6) topics.

The topics that Plaintiffs object to now are largely the same as the ones they did not object to at the October 24 deposition and agreed Defendants could take at a later time. (Ex. B). Topics (f), (g), and (h) simply divide October topic 3—the factual basis for Counts I-IV—into one topic per count. (cf Ex. B with Ex. D, G). Topics (c), (d), and (j) track October topics 5, 6, and 4. *(Id.)* That some overlap occurred on October 24 as to (c) and (d) does not justify withholding a witness; the parties

expressly discussed that overlap was expected and would not limit the later deposition. (Ex. A. at 8:16-9:6; 16:12-22). Having agreed to allow Defendants to take the deposition on these topics, Plaintiffs should be held to their agreement—an agreement that they requested. (Ex. A, at 8:16-9:6; 16:12-22). Plaintiffs did not object to the July 14, 2026 30(b)(6) notice.

After receiving the July 14, 2026 30(b)(6) notice, the court rules required Plaintiffs to promptly inform Defendants of any objections. *Id.* Plaintiffs objected only to the date; they wanted to delay producing their witnesses until the last week of discovery—almost a month later. (Ex. E.) Defendants offered other dates in late July and early August, conditioned on the agreement that Defendants could send document requests within three business days of the rescheduled deposition.[2] (Ex. C). Plaintiffs neither agreed nor provided additional dates. July 30 came and went.

At no point prior to the properly noticed July 30 deposition did Plaintiffs object to the topics in the notice or file a protective order motion. Thus, any objections have been waived. And Plaintiffs refusal to comply with a properly noticed deposition by the date noticed is sanctionable. Fed. R. Civ. Pro. 37(d)(1)(A)(i).

### B. Failing to obey court rules does not provide Plaintiffs with a third opportunity to object to the 30(b)(6) deposition.

---

[2] Discovery closes on August 31 so the last day to send document requests was August 1, unless the parties agreed to a later date.

On the morning of July 30, Plaintiffs finally provided additional deposition dates. (Ex. F. Brookins 7:59a email.) On August 4, at Plaintiffs' request, Defendants re-noticed the deposition for August 13. (Ex. G.)

Plaintiffs objected to the 30(b)(6) topics for the first time on August 11, two days before the rescheduled deposition and four weeks after service of the original notice. (Ex. H.) Rule 30(b)(6) required Plaintiffs to object "promptly"; a party that neither objects promptly, nor moves for a protective order, nor appears does not earn a second chance (or in this case, given the October 2025 notice, a third chance) to object at the last minute. Rule 37(d)(2) says as much: a failure to appear due to a party's untimely objection is insufficient to avoid discovery sanctions. Plaintiffs also never moved for a protective order. Through these failures, Plaintiffs forfeited their right to object.

Despite this, Defendants still tried to narrow the dispute, offering revised topics and dropping topic (i). (Ex. I, 8/11/26 email 4:45p). Plaintiffs refused the offer, willing only to agree to answer topics (f),(g), (h), and (j) through contention interrogatories. (*Id.* 8/12/26 email 12:28p and Ex. J, Osburn Dep. Tr. 116:11-18). Plaintiffs' offer gives away the point. Plaintiffs' objection is not to subject matter—they concede Plaintiffs can answer—but to forum. Plaintiffs want to answer these topics in a document drafted by counsel; they do not want their witnesses to answer under oath, where Defendants can follow up and test the answers. Only a Rule 30(b)(6) designee's answers bind the organization and if this case goes to trial, the attorneys do not get to testify; Defendants have a right to know the facts that

Plaintiffs know support its case and who at Plaintiffs have personal knowledge of these facts so that they can testify at a trial. Plaintiffs do not get to dictate their mode of response to these inquiries and the Court should not endorse this eleventh hour attempt to avoid their responsibilities under the court rules.

## II. The witnesses Plaintiffs produced were not prepared, which is the same as producing no witness at all.

Designating a witness is only half of Rule 30(b)(6)'s requirements. The organization must also prepare that witness to testify to what the organization knows, not merely to what the designee happens to remember. It must "make a good faith effort to find out the relevant facts possessed by the corporation—to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories." *Oro BRC4, LLC v. Silvertree Apts.*, No. 2:19-cv-4907, 2021 U.S. Dist. LEXIS 108678, at *10 (S.D. Ohio June 10, 2021) (citation omitted), objection overruled, 2022 U.S. Dist. LEXIS 48274 (S.D. Ohio Mar. 18, 2022). The designee's answers bind the organization, and he is "responsible for providing all the relevant information known or reasonably available to the entity." *Smith*, 2006 U.S. Dist. LEXIS 19093, at *16; *see also White v. City of Cleveland*, 417 F. Supp. 3d 896, 908 (N.D. Ohio 2019). Producing an unprepared designee is therefore "tantamount to a failure to appear," and is sanctionable under Rule 37(d). *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017); *Oro BRC4*, 2021 U.S. Dist. LEXIS 108678, at *11. To

measure preparation, the Court compares the testimony elicited against the noticed topics. *Wicker*, 278 F. Supp. 3d at 1000.

Mr. DeVries prepared by reviewing documents and speaking with in-house counsel. He spoke with no one else at any of the three Plaintiff entities—not the COO, not the program directors he later said he would "have to go back and look" to identify. (Ex. K, DeVries Dep. Tr. 14:7–15:9, 55:1–5.) He had not read the two contracts at the center of topic (e). (*Id.* at 51:19–21, 52:9–14.) *Oro BRC4* sanctioned that exact failure finding that a designee who reviewed his own emails, spoke with counsel, and interviewed no one else was "fundamentally unprepared". 2021 U.S. Dist. LEXIS 108678, at *15–17, *19, *22–23.

Topic (k) fared no better. Plaintiffs designated Mr. DeVries on the Church World Service relationship without objection, yet he could not say when that relationship ended, and when asked why Plaintiffs had to apply in 2024 to become a direct federal provider if it was already a direct provider, he answered, "I'm not prepared to answer that. I do not know." (Ex. K, at 79:20–21, 80:6–12.) Testimony given on that footing binds Plaintiffs to nothing and tells Defendants nothing.

Ms. Osburn was similarly unprepared. On topic (b), when asked about how many employees raised concerns about the advocacy policy, she did not know, when asked specifically about the refugee and immigrant services division relevant to this case, she did not know and when asked whether she had looked to see how many of those employees raised concerns, answered "No." (Ex. J, Osburn Dep Tr. 51:24-52:11). On topic (a), she claimed that there were only twelve exceptions where

employees were not required to sign the statement of faith, but she could not identify who received them, whether any were granted to the refugee and immigrant services division, or how many requests had been denied. (*Id.* at 58:25-59:7, 72:6-9.) Instead, Defendants were provided with a general statement that exceptions were made so that BCSM, for example, had employees who spoke the Afghan refugees' languages, even though she was unaware if any of the exceptions were given to any employee working in refugee and immigrant services. (*Id.* at 58:7-59:7). If she had checked her own email or asked Lorita Shirley, she would have learned that over a hundred employees had been allowed to not sign the statement of faith. (Exhibit L.) While a Bethany CEO may have only formally approved twelve exceptions, Ms. Osburn was aware that many other exceptions were allowed.

By failing to provide witnesses prepared to testify on the non-objected topics, Plaintiffs failed to provide witnesses as required by the court rules. *See Wicker* at 1000 and *Oro BRC4* at *11. The Court should accordingly require Plaintiffs to produce witnesses that can address the topics at issue.

## III. Plaintiffs stopped the deposition to get instruction from the Court but never followed through as required by the court rules.

An objection made at the deposition "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). Counsel may halt the examination only to preserve a privilege, to enforce a limitation the Court has ordered, or to present a motion under

Rule 30(d)(3). Even with Plaintiff's objections, the deposition was required to proceed on all eleven topics with those objections preserved for the Court. Plaintiffs withheld the witnesses instead. When their counsel demanded that the examination stop while he sought the Court's instruction, Defendants suspended it, as Rule 30(d)(3)(A) requires, and kept the deposition open. (Ex. H, Osburn Dep. Tr. 116:19–21, 117:12–15.). But that rule suspends a deposition only "for the time necessary to obtain an order." Plaintiffs still have not filed a motion for protective order, continuing instead to demand they be allowed to answer contention interrogatories rather than comply with the stipulated agreement. (Ex M). Two weeks later, the suspension Plaintiffs demanded has become a permanent refusal, requiring Defendants to file this motion.

**IV. Defendants' topics were proper.**

Even reaching Plaintiffs' objections, the withheld topics are proper. Topic (c) concerns bids Plaintiffs themselves placed at issue—Plaintiffs allege the scoring was pretextual, which makes the drafting, contents, and evaluation of each bid squarely discoverable. Fed. R. Civ. Proc. 26(b)(1).

Topic (d) concerns BCSM's performance under the contracts—the subject of BCSM's own self-monitoring reports and corrective action plans, and central to Defendants' explanation for the bid scores Plaintiffs challenge.

Topics (f), (g), (h), and (j) ask for the factual bases of Counts II, III, IV, and VI. Asking the factual bases for claims is proper, and courts in this circuit routinely require a party to designate a witness on the factual bases for its claims and

defenses. *White*, 417 F. Supp. 3d at 909–10; *Smith v. General Mills Inc.*, 2006 U.S. Dist. LEXIS 19093, at *8–9. Neither the attorney-client privilege nor the work product doctrine bars such testimony—because the privilege protects the communication and not the facts communicated; a designee must recite the facts even if counsel supplied them. *White*, 417 F. Supp. 3d at 910–11; *Smith*, 2006 U.S. Dist. LEXIS 19093, at *11–13. In any event, Plaintiffs offer to answer these same topics in writing and concedes both that the subjects are relevant and that Plaintiffs hold the information. The only question is whether Defendants get that information in a form they can test, enforcing Plaintiffs' recorded agreement to allow a 30(b)(6) deposition on these subjects.

## V. *Stryker* is distinguishable.

Plaintiffs have argued that they have the unilateral right to deny Defendants a 30(b)(6) deposition, without asking the court for a protective order, based on *Stryker Corp. v. XL Insurance America, Inc.*, No. 1:17-cv-66, 2019 U.S. Dist. LEXIS 242849 (W.D. Mich. Oct. 29, 2019). Plaintiffs' reliance on *Stryker* is misplaced.

*Stryker* held that a Rule 30(b)(6) deposition is not a matter of right and that Rule 26 gives the Court discretion to order contention interrogatories. *Id.* at *3–5. It does not hold that Plaintiff can unilaterally deny the opposing party a Rule 30(b)(6) deposition without resorting to court.

Four differences between *Stryker* and this case control. First, no party in *Stryker* had agreed to the deposition. Plaintiffs here did. In exchange for Defendants' agreement to limit the October 24, 2025 deposition to Count I,

Plaintiffs' counsel agreed on the record that Defendants could take a second Rule 30(b)(6) deposition on the remaining topics at a later date. (Ex. A at 16:12–22.) *Stryker* addresses the Court's discretion to limit a deposition one party demanded as of right; it does not permit a party to agree to a 30(b)(6) deposition on the record, get the benefit of its bargain and then withhold its performance.

Second, the responding party in *Stryker* moved for a protective order as required by the court rules. Here Plaintiffs have never asked this court for a protective order; under Rule 37(d)(2) that omission is dispositive.

Third, the interrogatories in *Stryker* were court-ordered, served, and answered before any deposition was sought, and the movant then could not say what was deficient about the answers. *Id.* at *2, *5–6. Here Plaintiffs proposed interrogatories in lieu of appearing, no court ordered that sequence.

Fourth, *Stryker* addressed a deposition sought to probe "only the opposing party's legal theories and conclusions, rather than factual matters." *Id.* at *3. Every topic Plaintiffs recently objected to seeks facts, not legal theories or conclusions. Topics (c) and (d) ask about the drafting and scoring of BCSM's bids and its performance under its contracts. (Ex. A, C and D). Topics (f), (g), (h), and (j) ask, in the notice's own words, for "the factual basis and supporting documentation" for each claim and require the designee to "authenticate all supporting documents." *Id.* Not one asks for a legal conclusion. Note also that Plaintiffs produced no documents at the deposition and could not identify what documents they reviewed

or were relying on; Defendants requested these documents per the parties' agreement.

*Stryker* instead supports Defendants' position. Where a party identifies a specific factual dispute not covered by other discovery, a 30(b)(6) deposition is the appropriate vehicle, *id.* at *4, and a party permitted to take the deposition "is entitled to a well-prepared witness," *id.* at *5. Here, Defendants have attempted to discover Plaintiffs' relevant information but have failed to produce a witness to testify to such information. For example, Plaintiffs claim that they lost certain bids because of their religious beliefs but have not yet identified who participated in preparing the specific bids at issue, what role those participants had, their experience in writing bids, or even anyone who has read the bids that are at issue here. These are not questions for counsel, these are facts that should come from Plaintiffs' supporting witnesses.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Defendants respectfully request that the Court:

(1) order Plaintiffs to produce a fully-prepared witness (or witnesses) to testify in responses to topics (c), (d), (f), (g), (h), and (j) within 14 days of this Court's Order;

(2) award Defendants costs and fees associated with making this motion;

(3) require Plaintiffs to pay for the costs of the August 13th 30(b)(6) deposition, as well as the ordered deposition;

(4) grant Defendants additional time to file their motion for summary judgment, if necessary, based on when the deposition is ordered to occur; and

(5) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Marla Linderman Richelew*
Marla Linderman Richelew (P55759)
Neil Giovanatti (P82305)
Assistant Attorneys General Michigan
Department of Attorney General
Civil Rights & Special Initiatives
Attorneys for Defendants
3030 W. Grand Boulevard, 10th Floor
Detroit, MI 48202
(313) 456-0200
lindermanrichelewm@michigan.gov

Dated: August 28, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Marla Linderman Richelew*
Marla Linderman Richelew